FILED
LODGED
RECEIVED 

FEB 22 2016

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

Emanuel D. Fair
_____
**(Name of Plaintiff)**

vs.

King County Correctional
Facility, et al.
Defendants.
_____

**(Names of Defendant(s))**

16-CV-00273-JLR-JPD

**CIVIL RIGHTS COMPLAINT
BY A PRISONER UNDER 42
U.S.C. § 1983**

## I. Previous Lawsuits:

A. Have you brought any other lawsuits in any federal court in the United States while a prisoner?:

☐ Yes   ☑ No

B. If your answer to A is yes, how many?:_____. Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

1. Parties to this previous lawsuit:

   Plaintiff:_____

   Defendants:_____
   _____

2

2. Court (give name of District): _____ *Best scanned image available.*

3. Docket Number: _____

4. Name of judge to whom case was assigned: _____

5. Disposition (For example: Was the case dismissed as frivolous or for failure to state a claim? Was it appealed? Is it still pending?):

_____

6. Approximate date of filing lawsuit: _____

7. Approximate date of disposition: _____

**II. Place of Present Confinement:** King County Correctional Facility

A. Is there a prisoner grievance procedure available at this institution? ☑ Yes   ☐ No

B. Have you filed any grievances concerning the *facts* relating to this complaint? ☑ Yes   ☐ No

   If your answer is NO, explain why not:

_____

_____

C. Is the grievance process completed? ☑ Yes   ☐ No

   **If your answer is YES, ATTACH A COPY OF THE <u>FINAL</u> GRIEVANCE RESOLUTION for any grievance concerning facts relating to this case.**

**III. Parties to this Complaint**

A. Name of Plaintiff: Emanuel Fair        Inmate No.: 210038184

Address: KCCF, 500 5th Ave, Seattle, WA 98104

(In Item B below, place the full name of the defendant, his/her official position, and his/her place of employment. Use item C for the names, positions and places of employment of any additional defendants. Attach additional sheets if necessary.)

B. Defendant: Claudia Balducci        Official Position: Former Director

Place of employment: King County Department of Adult and Juvenile Detention

3

**Best scanned image available.**

C. Additional defendants KCDAJD Policy Committee members 2012 to present, Officer McCoy, Officer Barry Clemons, Sgt. David Bliss, Captain Michael Woodbury, Sgt. Mohamed, Sgt. Carla M. Vicari, Sgt. M.R. Allen, Captain Clark, Former Supervisor Richard Pennington PHSS 4417, Officer Henry Monteza, Officer Pablo Chan, Officer Letter, officer C. Walker, JHS Supervisor Sean Dumas PHSS 3515, (See Additional Attachment)

### IV. Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates, places, and other persons involved. Do not give any legal arguments or cite any cases or statutes. If you allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets if necessary.)

Because of the unprofessionalism of the defendants named, I have been diagnosed with Median, Ulnar and Radial Peripheral Sensory Neuropathy at the right wrist. As diagnosed by Harborview Neurology Clinic: See Attachment. I have limited use of my right hand which makes it difficult to perform simple day to day task. I constantly drop things and have a hard time holding books, cups, meal trays or much of anything else due to numbness. I am suffering several maladies some named here: Agonizing shooting pain, burning, cold sensation, pins and needles symptoms and tightness; I only have full feeling in two fingers out of the five at the right hand. Doctors say that I am at risk of permanent harm or a lingering disability. I have been and continue to clamour nightly, and mentally this injury has caused me depression, stress and qualms of not being able to regain the normal use of my hand. Additionally I have been suffering emotionally just as much as physically, and have had trouble sleeping because of the chronic pain and post-traumatic sydrome.

This injury happened in major part due to the Defendant(s) department policy 4.03.009 on Use of restraints signed into effect on December 28, 2012 by then-Director Claudia Balducci (Defendant #1), and the involvement of the KCDAJD Policy committee members (Defendants #2) at or around that time. As a pretrial detainee I was, and still remain in Protective Custody and posed no threat in visiting. Claudia Balducci stepped down before responding to my letter (See Attachment). On 2-15-13 after being informed of an attorney visit, I notified escorting officer McCoy (Defendant #3) of my court order to have both hands free during visitation with Defense Counsel, but he violated that order placing me in restraints anyway. This court order was signed by a Judge on July 8, 2012 (See Attachment). During this aforementioned visit I was unable to properly sit on the stool, or sit up straight, and one point I had to get down on one knee due to the discomforting position the restraints placed on me. I endured serious physical effects such as the loss of blood circulation, pain, bruising, cramping and numbness. The inability to move certain ways also prevented me from effectively assisting my attorney. I then wrote a grievance on 2-20-13 notifying officials of the substantial risk of serious harm, but they failed to respond reasonably. I suffered excessively for over a year, and was given the runaround by both DAJD and Jail Health Services also causing mental and emotional anguish. The policy has since been changed.

4

**V. Relief**

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

Finally, we arrive at the conclusion of my behest of this Honorable court to garner my relief. For sake of brevity I will not be coy, nor equivocate but be germane in imploring this court to be fair, as I trust the court will, after considering the premises for my relief sought; my layman's estimation in the amount of $1,750,000 should suffice the compensatory and punitive damages that I've unfortunately incurred. I have been forthright, I've not fabricated any of my averments, I have not created any hyperbole to unduly prejudice the defendants, I would not have the audacity, nor hutzpah to try and beguile this court. The defendants are well aware of my supporting facts and should accordingly be held accountable. Please grant relief. Respectfully beseeched

I declare under penalty of perjury that the foregoing is true and correct.

Signed this __16__ day of __February__ 20 __16__.

_____
(Signature of Plaintiff)

5

Statement of Facts
Attachment pg 1 of 5
Case 2:16-cv-00273-JLR   Document 12   Filed 03/16/16   Page 5 of 11
Best scanned image available.
LOGED
RECEIVED
MAIL
FEB 22 2016
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUT

On 3-5-13 I was informed I had an attorney visit. I notified booking officer Barry Clemons (Defendant #4) of my court order to have both hands freed during visitation with Defense Counsel, but he violated that order placing me in restraints anyway. Officer Clemons then failed to respond reasonably to my pleas for him to loosen the cuffs he placed on too tight. I explained my inability to move my wrist within the cuffs by showing him how firm they were on my wrist but he said: "It looks fine to me". Officer Clemons also failed to double-lock the cuffs like professional and reasonable officers do. Officer Clemons had a chance to eliminate a risk of harm once he learned about it, but he refused to make a good-faith effort which led to the injury of my wrist. My visitors during that time happen to be Ms. Cynthia Skow, MSW, LICSW out of my attorneys office along with Ms. Priscilla kyu a social work intern she brought along. (See Attached Declaration) It was extremely difficult to interact with my visitors and I often had to twist my back and neck and remain in these contorted positions in attempt to combat the pain of the cuffs digging into my wrist, leaving me to also suffer acutely and chronically in other areas. After my visit, officer Clemons retaliated against me for seeking medical attention. He became aggressive and showed no concern for my health and safety. His harassing behavior and inappropiate comments supported his indifference. I felt intimidated and confused by Officer Clemons implementation of his personal conduct rather than his professional conduct. (See Attachment) See Attachment C-1,2,3,4

On 3-7-13 As a respondent of my complaint regarding my injury, Sgt. David C. Bliss (Defendant #5) acted with deliberate indifference in showing no concern for my health or safety. He ignored the risk of further serious harm and disregarded my pleas for help as I was made to suffer at the hands of the departments policy.

On 3-12-13 As a respondent of my complaint Captain Michael Woodbury (Defendant #6) acted with deliberate indifference for failing to take this matter seriously. He was inform of the harm committed and failed to respond reasonably. His response was incorrectly stating there was no court-order regarding me, declared I had provided no new information and closed the issue of my complaint without making a good-faith investigation into this matter. I then had to write an additional grievance #0313 100 because Captain Woodbury failed to sign and date the complaint at the appeal stage. That grievance was received on 3-15-13. I finally received a copy of the original complaint, but with a signature and date. This defendant should have given the date he signed the appeal instead he back dated, and actions like that are unacceptable at his position. (See Attachment C-2 & 3)

On 5-11-13 I endured retaliation with threats of disciplinary infraction by Sgt. Mohamed (Defendant #7) for addressing the continual harm caused to me when my injury(s) were exacerbated during visitation on 4-21-13. Sgt. Mohamed act with deliberate indifference and failed to respond reasonably by ignoring any request for accommodations. Two days after that visit, on 4-23-13 Sgt. Mohamed delivered 3 grievances I hadn't receive responses for. The first complaint written on 2-20-13 notifying officials of the substantial risk of serious harm hadn't been returned, which prompt me to

Case 2:16-cv-00273-JLR   Document 12   Filed 03/16/16   Page 6 of 11
Best scanned image available.

write an additional grievance on 3-21-13 and a 3rd on 4-11-13 when no response was given. No notification was given as to why DAJD took so long to respond supporting officials deliberate indifference. (See Attachment D, B-1,2,&3)

On 4-23-13 Sgt. Carla M. Vicari (Defendant #8) acted with deliberate indifference and failed to respond reasonably after being made aware of a substantial risk of serious harm. The grievance she responded to was written on 2-20-13 and wasn't returned until 4-23-13. She alleged that a request to have the policy reviewed would be submitted, but further harm continued for over a year. (See Attachment B-1,2 & 3)

On 5-22-13 I requested accommodations through a grievance. Sgt. M.R. Allen 64122 (Defendant #9) was made aware of the substantial risk of serious harm and failed to respond reasonably. Sgt. Allen responded to my complaint, and failed to provide information on who he spoke with within Jail Health Services regarding me. If he would have looked into this matter he would have seen past complaints specially the first notifying officials. (See Attachment E-1,& 2,3)

On 6-4-13 In my grievance appeal requesting accommodations Captain Clark (Defendant #10) was made aware of the substantial risk to further serious harm, provided with vital information and failed to respond besides noting my comments. This Captain unfairly closed the issue of my complaint without thoroughly investigating and following-up with then- Jail Health Services Supervisor Richard Pennington PHSS, 4417 (Defendant #11) who was the proper JHS personnel to speak with, but this defendant disregarded a resolution. Mr. Pennington claimed to have followed up on this information when I spoke with him on 5-31-13 during first shift at 1:20 pm, but said there has been no give by DAJD at that time. So DAJD didn't care about my injury(s). (See Attachment E-1 & 2)

On 12-17-13 my injury(s) was exacerbated when I was escorted in cuffs and the restraints to the medical clinic by Officer Henry Monteza (Defendant #12) He was made aware of the injury to my right wrist as I removed my brace for him to place the cuffs on. I informed this officer the cuffs were too tight, but he ignored me instead inflicting pain with all the pulling and jerking of the restraints. Before getting on the elevator I showed Officer Monteza the damage he was causing with the cuffs digging into my wrist, and his words were: "Sir, I'm sorry, it's policy." The policy they say is to secure and control inmates, not inflict pain. This officer made no attempt to loosen the right cuff. (See Attachment F)

On 2-4-14 my injury(s) was exacerbated when I was escorted in cuffs to the KCJ infirmary by Officer Pablo Chan (Defendant #13) This officer was made aware of my injury because I informed him when he inquired about my brace I removed for him to place the cuffs on. He still showed no care or concern placing the cuffs on tightly and pulling and jerking to remove them. Once we arrived at the infirmary, he instructed me to turn so many different ways because of his difficulty removing the cuff and due to the

Statement of Claim
Attachment pg 3 of 5

Best scanned image available.

cuff slot on the door being lower than most. Shortly after he removed them and left, I felt a sharp pain shoot up my arm followed by numbness. I notified Officer Lether (Defendant #14) who said he'd get the nurse, but no one came. Later on I pressed the intercom and notified Officer C. Walker (Defendant #15) who said : "I know, we told them," but still no one came. This bothered me psychologically because I was in the infirmary and no help arrived. Befor the end of that shift, a nurse finally came but failed to asses my injury, and only addressed the preparation for my hospital visit the next day. (See Attachment - G-1, & 2)

On 2-8-14 I wrote a medical grievance about being ignored in the infirmary on 2-4-14. JHS Sean Dumas (Defendant #16) claimed to have reviewed the log book and didn't see that I had requested to see a nurse. In my appeal of that same complaint I specifically asked this defendant if this log book he was speaking of for officers? He did not answer my question leaving me unable to figure of if this log book is for nurse's or officers. PHSS, 3515 Sean Dumas has been aware of my injury(s) for over a year, and he refused to bring this matter to the attention of DAJD like (Defendant #11) then-supervisor Richard Pennington PHSS, 4417 attempted to. He continued to suggest I address this matter with DAJD, but both DAJD and JHS have a (MOU) Memorandum of Understanding to address issues and solve problems. The Joint Leadership Team (Defendant(s) # 17) is a group of members from DAJD and JHS, and they repeatedly acted with deliberate indifference and failed to respond reasonably and did nothing for over a year. See Attachment G-1, & 2, H-1, 2, 3, E-3, 4

On 2-13-14 my injury(s) was exacerbated when I was escorted in cuffs and the restraints to a visit by 2nd shift officer J. Garcia (Defendant #18). Officer J. Garcia was well aware of my injury and ignored my request to loosen the cuffs placed on too tight. I was forced to endure the pain and lost the feeling in my wrist and hand. My visitor on this day was Ms. Cynthia Skow, MSW, LICSW (see Attached Declaration). During that visit officer Garcia brought nurse Valerie Fisher (Defendant #19) to deliver my medication. When I reached for the cup of water from the nurse I had to stand up because of the length between the cuffs and chain around the waist. It was then that I realized that my wrist was bleeding pretty bad due to the cuffs digging into my wrist. Nurse Valerie Fisher said nothing and did nothing, she just watched when it was clear I needed medical attention. Officer Garcia finally loosened the cuff and him and the nurse left. Still bleeding I wrapped up my visit intended on seeking medical attention because nurse Valerie didn't assist and officer Garcia didn't get help. The next escorting officer Anthony L. Farrell called a nurse who came up and treated me. Nurse Valerie was well aware of my injury(s) because she was the responding nurse on 3-5-13. See Attachment I-1, 2, 3

On 4-7-14 I was seen in the clinic by Roger Higgs M.D. (Defendant #20), and I have been seen before on numerous occasions in the past for my injury(s). Through medical records and past visit, this defendant was well aware of the type of injury I had, and had even increased my medication during one visit. During this visit in question, this defendant intentionally interfered with treatment I already had in place by another provider. This defendant knew the substantial risk of serious harm would result from his failure to carry out my

Statement of Claim
Attachment pg 4 of 5

**Best scanned image available.**

treatment properly. A year after two different providers diagnosed compressed nerve and peripheral neuropathy this defendant misdiagnosed Carpal Tunnel Syndrome as the only upper extremity problems. He lied and said I told him the pain medication wasn't helping and he stopped it leaving me to suffer in pain until my next clinic appointment when he started it up again. It made no sense for this defendant to diagnosed me with another condition, stop my pain medication and not prescribe anything for the condition he diagnosed, no substitutions were made. On 4-18-14, frustrated with Jail Health Services unconcerned, uncaring approach, I wrote a letter to Harborview Medical Center's Neurology Clinic asking for help and to be seen (See Attachment) I received a respond on 4-25-14 acknowledging the arrival of my letter and that they would be happy to see me for an evaluation, however I would need a referral from a KCJ provider. Around the time of the injury JHS provider Jennifer Jones-Vanderleest, M.D (Defendant #21) ordered X-rays of my wrist, but refused to send me to Harborview for evaluation saying it's too expensive. On 4-28-14 during a clinic visit I asked defendant Roger Higgs to refer me to the Neurology Clinic at Harborview, he refused but said I may need surgery. I then said wouldn't that be enough reason to send me, and he said they won't want to see me. I then showed him Harborviews letter to convince him to put in the referral, he read the missive and agreed. This defendant was aware of what clinic I was suppose to be referred to because of the letter and the type of injury but this defendant on 5-4-14 referred me to the Orthopedic Hand Clinic instead of Harborview Neurology Clinic, and that request was denied, delaying me evaluations to better characterize injury. The defendant knew the Orthopedic Hand specialist would deny me because he said so before I showed him the letter. (see Attachment J-1,2,3, 4,5,6 K-1,2,3,4, M-4

On 7-2-14 I was finally referred to Harborview Neurology Clinic by JHS provider Jennifer Jones-Vanderleest, M.D. (Defendant #21). This defendant first refused to refer me due to the cost of the procedure, and now made the referral 16 months after the injury. Had I been referred after my injury I would not have suffered due to JHS and DAJO's deliberate indifference. I was prescribed a medication (Amitriptyline) for pain by JHS provider Debra Beckman, A.R.N.P. (Defendant #22) and developed blurry vision. I asked Defendant #21 Ms. Jones-Vanderleest if my blurry vision would go away and she said yes! but it never did, as a result I was referred to HMC Ophthalmology for eye exam which determined I needed eye glasses. (See Attachment) When I brought the vision problems to the attention of Ms. Beckman and Jones-Vanderleest, it wasn't stopped right away causing harm. (see Attachment K-1,2,3,4. L-1,2,3

Though JHS provided initial care, follow-up, treatment trials and later consultations, my injurys were exacerbated excessively and JHS allowed this harm to continue without notifying DAJO. Christopher Salatka R.N. (Defendant #23) was aware of my injury and on 3-3-14 informed DAJO there were not any contraindications to the use of handcuffs, however modifications in the tightness and length appears to be appropriate. Had this Supervisor or Benjamin L Sanders M.D. (Defendant #24) responded reasonably DAJO could have been informed that there were contraindications, but they never cared or took my injury seriously until results came back from the Neurology clinics testing done on 7-25-14. In a complaint written on 8-25-14 Defendant #24

Statement of Claim
Attachment   pg 5 of 5

**Best scanned image available.**

Benjamin L. Sanders M.D. moved around important questions as to why he and his staff acted with deliberate indifference for well over a year, when JHS operating procedure states JHS providers have access to a network of specialty clinics within Harborview/University of Wash. medical care system. JHS's early actions could have prevented further damage. (see Attachment) (See Attachment M-1, 2, 3, 4  )

   On 9-22-14 I received a response from a letter I had written to Director Designee William Hayes (Defendant #25). In that letter Major Corinna A. Hyatt (Defendant #26) responded about the reasonable accommodations that were made to minimize risk of injury or aggravation of my injury. The problem is DAJD Facility Commander Gordon G. Karlsson (Defendant #27), and Captain Douglas W. Justus Jr. (Defendant #28) failed to take reasonable efforts to accommodate these risk after the injury instead of allowing me to suffer. This is clear deliberate indifference on both DAJD and Jail Health Service - Public Health. Both DAJD and JHS continued to give me the runaround in my complaints and shifted blame when both have a Memorandum of Understanding to address issues and solve problems. Around the time of my injury there was a Joint Leadership Team (Defendants # 17) which is members of both DAJD and JHS and also failed to respond reasonably and did nothing for over a year. (See Additional Attachments, N

   The policy was finally changed, and inmates in Protective Custody no longer have to wear restraints during visitation and around the facility. I am asking the Honorable Western District Court to grant me compensation in the amount mentioned on page 5 for me suffering Median, Ulnar, Radial Peripheral Sensory Neuropathy to my right wrist, following with the maladies of chronic agonizing pain and numbness, virtually leaving me with an unwarranted, physical impairment, coupled with a posttraumatic sydrome of emotional and mental distress. As averred above this injury was/is unwarranted, and may I add unnecessary and could have been avoided had it not been caused by the indifference(s) and unprofessionalism of the defendant(s); that I am holding responsible, as I have spearheaded their involvement(s) while respectfully indulging this court with the history leading up to my injury.

   DAJD and JHS grievance system was used throughout the course of my injury. I did what I could to exhaust all remedies but a lot of complaints weren't returned or were delivered past the grievance response time. Some complaints were returned without responses. (See Additional Attachments)

   The changes that were made could have been done after the injury instead over a year later. Accommodations came too later

**Best scanned image available.**

Defendant(s)

#
1 Former Director Claudia Balducci
2 KCDAJD Policy Committee members 2012 to present (Names yet to be obtain)
3 Officer McCoy
4 Officer Barry Clemons
5 Sgt. David Bliss
6 Captain Michael Woodbury
7 Sgt. Mohamed
8 Sgt. Carla M. Vicari
9 Sgt. M.R. Allen
10 Captain Clark
11 Former JHS Supervisor Richard Pennington PHSS 4417
12 Officer Henry Monteza
13 Officer Pablo Chan
14 Officer Lether
15 Officer C. Walker
16 JHS Supervisor Sean Dumas
17 DAJD & JHS Joint Leadership Team members 2012 to present (Names yet to be obtain)
18 Officer J. Garcia
19 JHS Nurse Valerie Fisher
20 JHS Roger Higgs M.D.
21 JHS Jennifer Jones-Vanderleest, M.D.
22 JHS Debra Beckman, A.R.N.P.
23 JHS Supervisor Christopher Salatka, R.N.
24 JHS Supervisor Benjamin L. Sanders, M.D.
25 Director Designee William Hayes
26 Major Corinna A. Hyatt
27 Facility Commander Gordon G. Karlsson
28 Captain Douglas W. Justus JR.

In Conclusion I wish to sue all of the above defendants in both their Individual and Official Capacity. Also King County Correctional Facility as a municipality due to the past policy of that municipality was a moving force behind the violation I suffered.

Emanuel Fair 217703B161

K.C.C.F

500 5th Ave

Seattle, WA 98104



Clerk, U.S. District Court

700 Stewart Sheet, Suite 2

Seattle, WA 98101-1271





Mailed From 98104
02/18/2016
032A 0061807160

US POSTAGE
$ 01.20
First-Class

